### PEOPLE *v.* MORROW.

CRIMINAL LAW—APPROPRIATING PROPERTY RECEIVED IN OFFICIAL CAPACITY.

In a prosecution for the violation of 3 Comp. Laws 1915, § 15378, in connection with the sale of certain oil belonging to the city of Flint, evidence *held,* sufficient to sustain a conviction.

Error to Genesee; Black (Edward D.), J.    Submitted April 13, 1923.    (Docket No. 130.)    Decided June 4, 1923.

Joseph Morrow was convicted of violating section 15378, 3 Comp. Laws 1915.    Affirmed.

*Thomas Stockton,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Harry G. Gault,* Prosecuting Attorney, for the people.

MOORE, J.    The defendant was found guilty of a violation of the provisions of section 15378, 3 Comp.

Laws 1915. The case is brought here by writ of error. At the close of the proofs introduced by the people in this case a motion was made by defendant's counsel asking the court to withdraw this case from the jury and direct them to return a verdict of not guilty. This request was based on the claim that no testimony had been introduced on the part of the people that in any way showed the defendant had received any portion of the purchase price paid for the oil, or that he received any money directly or indirectly from Mr. Pratt, the purchaser. This motion was overruled and the defendant offered such testimony as he desired.

The court charged the jury as follows:

"Gentlemen of the jury: 1. This is an action brought in the name of the people of the State of Michigan against the respondent, Mr. Morrow, under three counts in the information. The first count is under section 15378 of the Compiled Laws of the State of Michigan of 1915. I will read a portion of that section to you later on in the charge that I have to make. * * *

"Now there has been some testimony given here by some of the witnesses in regard to the value of the oil. I charge you, gentlemen, the only reason that testimony would be competent in this case is to show whether or not the respondent in this case used honorable and fair judgment in disposing of the oil. It is not for the purpose of protecting the city officials who sold it, if they sold it at a reduced price, to either condemn or credit them, that is not in the case at all. The city officials outside of the respondent here are not on trial. Their actions in this case are not to be considered by you.

"As I started to say to you this information is charged in three counts. I charge you that I think there is but one count of this information upon which I will present this case to you, and that will be, as I stated before, section 15378 of the Compiled Laws of 1915, which reads as follows:

" '*The People of the State of Michigan enact:*     That if any person holding any public office in this State, or if the agent or servant of such person, knowingly and unlawfully appropriates to his own use, or to the use of any other person, the money or property received by him in his official capacity or employment, of the value of fifty dollars or upwards, the person so offending,' etc.

"I charge you, gentlemen of the jury, if you find in this case that the respondent, Mr. Morrow, entered into this transaction with Mr. Pratt, knowingly and unlawfully selling him this oil at a lesser value than it was worth with the intention of doing injury to the city of Flint, then under this section of the statute he could be found guilty.     But under the other two sections of the statute, which includes embezzlement, I think it is my duty to withdraw from your consideration the fact of any embezzlement on the part of Mr. Morrow.

"*Mr. Gault:* How about the second count.     That is based on that same statute, too.

"*The Court:* I will say this, gentlemen, in the second count, if you find from the testimony in this case, from the exhibits which have been introduced in the case which is testimony to you—if you find by the testimony offered that goes to show to you beyond all reasonable doubt that there was some agreement whereby this oil was to be sold or purported to be sold to Mr. Pratt, and that Mr. Pratt was simply acting as a go-between, and that the respondent knew that the oil sold was to be sold for fifty cents a gallon, whether the money went to Mr. Pratt or whether it went to Mr. Morrow, that would be a violation of the statute, and that you must find, if you find that at all—you must find it from all the testimony in the case."

The position of counsel in this court is stated as follows:

"We earnestly submit to this court that not a word of testimony was introduced in this case that in the slightest degree indicated that the respondent received any portion of the purchase money paid for this oil, or that the oil was ever in his possession or under his

control. We contend that in order that the respondent could be convicted for a violation of this statute that he must have received either the property or money into his possession in his official capacity, and that in this case the people having failed to introduce any testimony that this respondent received any property or money belonging to the city of Flint by reason of his being a member of the common council, that the trial judge should have directed the jury to return a verdict of not guilty."

In June the council adopted the following resolution:

"Resolved that this council hereby authorizes the purchasing agent and Alderman Morrow to dispose of the following list of excess materials and equipment now on hand at the Ann Arbor street yards."

Among the items were 60 barrels of Liberty Aero motor oil, which the proofs show was worth 64 cents a gallon in car load lots. The defendant negotiated a sale of 25 barrels of this oil, he claims to one Pratt, for 25 cents a gallon, and that Mr. Pratt in turn sold the oil to Baker and McKay for 50 cents a gallon, and that the profit made in the transaction enured to the benefit of Mr. Pratt, and that no part of it was shared by the defendant.

The record shows that the oil was not delivered to Pratt, but was delivered directly to Baker and McKay, and that defendant was present when the oil was delivered and counted the barrels.

The yard man who had the custody of the oil swore in part as follows:

"I saw Mr. McKay around the yard, never saw Pratt, have seen Morrow. I talked with Morrow about the oil the day after the oil was delivered to Pratt. Morrow came to me in an awful hurry and he wanted the balance of the oil delivered right away. I told him that as soon as I got a truck that was not busy I would deliver the oil, that is the only particular conversation I had with him. I had never talked

with him about this oil before.    He was in a hurry for the balance of the order and we could not get it to him.    I had a combination order.    I did not take individual orders.    The order not only covered the oil to Baker and McKay but a lot of other oil.    I told him that he could not get it.    I told him that the trucks were busy and that there was only one truck that I could send it on.    He said he had to get his divvy out of it and he could not get it if it was not delivered.    The order that I had covered oil for Baker's and Winslow's."

The defendant denied this testimony.    It is true there is no direct proof that defendant profited by the transaction and that both he and Pratt testify that he did not profit by it and that defendant did not know what Baker and McKay were paying for the oil.    It would profit no one to recite the evidence in detail.    There were many circumstances from which inferences could be fairly drawn that defendant had knowledge of what was going on.    The deciding questions were questions of fact.    They were fairly submitted to the jury.

The conviction is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.